55 CCPA

**Application of Dow D. WARREN and Clement M. Kucera.**

**Patent Appeal No. 7961.**

United States Court of Customs and Patent Appeals.

May 2, 1968.

———◆———

J. Vincent Martin, Joe E. Edwards, Houston, Tex. (Carl T. Mack, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.[*]

WORLEY, Chief Judge.

Warren and Kucera appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 1, 2, 4–6, and 9–18 in their application[1] for "Drill String Member" as unpatentable in view of certain prior art under 35 U.S.C. § 103.

The invention relates to drill collars used in drilling oil and gas wells. The specification describes the problems resulting from the use of certain prior art drill collars:

> One of the most important purposes in the use of drill collars is to concentrate the weight load near the bit at the lower end of the rotary drill string. A drill collar comprises a long and heavy member located in the drill string above the bit, and is connected to the lower end of a lighter string of drill pipe. The string is used for rotating the drilling bit, and to conduct drilling fluid downwardly therethrough and through the bit to remove formation cuttings being dislodged by the drill bit. Two or more drill collars may be connected in series with one another, depending on the desired weight to be applied to the bit.

> The outside dimension of a drill collar is less than the diameter of the bit so as to permit the drilling fluid and cuttings to be returned upwardly to the surface of the earth through the space between the bore wall, drill collar and drill pipe. In some formations, especially if rotation is suspended, the drill collars may become stuck in the well bore, and it is believed that in the drilling of oil and gas wells, such sticking may be caused by a force acting on the collar when it engages a side wall of the bore. In such cases the hydrostatic pressure of the drilling fluid conventionally employed in this type of drilling, may be greater than that of the formation pressure at the drill collar location in the bore, such that the collar may be held against the wall of the bore with a force dependent upon the area of drill collar contact and the pressure differential between the hydrostatic pressure of the drilling fluid and that of the formation at such location in the well bore.

Appellants obviate the likelihood of the drill collar sticking to the well bore by

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 298,180, filed July 29, 1963.

either placing grooves in the surface of the collar, or providing holes extending through portions of the collar to relieve any differential pressure which may exist. In cross-section, the drill collar may be square with rounded corners, as recited in claims 1, 2, 9, 10 and 16, or circular as recited in the remaining claims. Claims 1 and 4 are illustrative:

1. A drill collar connectable at its ends into a rotary drill string, and having a substantially square cross-sectional shape with rounded corners, the said corners having a plurality of axially spaced grooves therein, the said grooves adapted to permit the passage of a fluid therethrough.

4. A drill collar connectable at its opposite ends into a rotary drill string, and being general-cylindrical [circular?] in cross-sectional shape, a bore extending longitudinally through said collar, the wall of said drill collar having a plurality of holes therethrough extending substantially transversely of said member to establish communication through said wall from one area of the drill collar to another area remote therefrom.

The references are:

Fox            2,999,552   Sept. 12, 1961

Toelke        3,175,374   Mar. 30, 1965
                  (Filed June 22, 1962)

The *Oil and Gas Journal*, Mar. 19, 1962 (pages 177 and 178)

The Journal publication discloses a drill collar of square cross-section having rounded corners which tend to center the drill string in the well bore and lessen the chance of boring a crooked hole with "severe dog legs." According to the specification, appellants employ such a construction to achieve the same result. But, as appellants point out, the publication does not disclose the use of grooves or holes in the surface of the drill collar as fluid passageways.

Toelke acknowledges prior proposals "to center the drill string in the well bore to inhibit sticking, and various means of grooving of the drill string." He discloses a drill collar of circular cross-section wherein axially spaced grooves or recesses form passageways for conducting fluid from one surface area to another surface area of the collar, thus relieving the differential pressure acting to stick the collar to the well bore wall. The recesses may be arranged "at an angle relative to the longitudinal axis of the drill string."

The board regarded Fox as cumulative to Toelke. We need not discuss Fox further, beyond noting that he, like Toelke, recognized the problem of the collar sticking to the well bore, and consequently provided the collar with helical grooves in its outer surface to allow passage of fluid and "lessen the likelihood of its sticking."

The board sustained the examiner's rejection of claims 1, 2, 9, 10 and 16 as unpatentable over the Oil and Gas publication in view of Toelke, and claims 4–6, 11–15, 17 and 18 as unpatentable over Toelke alone. Both were of the opinion that, in view of Toelke's disclosure of the use of grooves in the outer wall of a drill collar of generally circular cross-section to establish fluid passageways from one outer surface area to another in order to decrease any differential pressure, it would be obvious to a person of ordinary skill in the art to provide grooves in the outer wall surface of the drill collar of square cross-section described by the publication to achieve the same result. The examiner regarded the use of holes extending through the wall of the drill collar to be obvious as "merely a matter of design or choice," the board adding that the functional uses of a recess, groove, conduit or hole "are so closely related" and interchangeable as to leave nothing unobvious in the substitution of one for another in the present instance.

Appellants' arguments do not convince us of error in those positions. It is no doubt true, as appellants contend, that the cited references *per se* do not preclude "further invention in the drill collar

field." Nevertheless, Congress has said that a patent may not be obtained if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. We are satisfied that, for the reasons advanced by the tribunals below, the presently claimed subject matter does not conform to the conditions for patentability expressed in section 103.

The decision is affirmed.

Affirmed.